1
2
3
4
5
6
7 UNITED STATES DISTRICT COURT
8 EASTERN DISTRICT OF CALIFORNIA
9
10 JAMES L. GARY,                              1:10-cv-00318 MJS HC

                        Petitioner,      ORDER DISMISSING PETITION FOR
11                                            WRIT OF HABEAS CORPUS
      v.
12                                           ORDER DIRECTING CLERK OF COURT
                                             TO ENTER JUDGMENT AND CLOSE
13 H.A. RIOS,                                 CASE
14                      Respondent.
15 _____/

16        Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas

17 corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), Both parties have

18 consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

19 **I.    FACTUAL BACKGROUND**

20        Petitioner was convicted in the Western District of Missouri and is currently in the

21 custody of the Bureau of Prisons for violations of 18 U.S.C. §§ 922(g), 924(a)(2), Felon in

22 Possession of a Firearm, 18 U.S.C. § 1791(a)(2), Possession of Methamphetamine by a

23 Federal Inmate, and for violation of Supervised Release, with a combined term of 141

24 months, and a projected release date of November 14, 2012. (Answer, p. 2, ECF No. 19.)

25        On January 14, 2010, Petitioner requested a transfer to a residential re-entry center

26 (RRC) for the remainder of his sentence. On February 17, 2010, his request was denied,

27 based on a review of the five factors described in 18 U.S.C. § 3621(b). However, prison

28 staff recommended a 150-180 day RRC placement to facilitate his transition into the

1   community. (See Pet at 10, ECF No. 1.)

2       Directly thereafter, on February 23, 2010, Petitioner filed the instant federal habeas

3   petition. Petitioner argues Respondent failed to consider the individual factors in

4   determining Petitioner's eligibility for the RCC program. Respondent filed an answer to the

5   petition on March 3, 2011. Petitioner filed a traverse to the answer on April 4, 2011.

6   **II.    EXHAUSTION**

7       Respondent argues that Petitioner has failed to exhaust his administrative remedies.

8   Petitioner asserts in his traverse that exhaustion be excused.

9       The exhaustion prerequisite for filing a § 2241 petition is judicially created and is not

10  a statutory requirement. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus,

11  "[b]ecause exhaustion is not required by statute, it is not jurisdictional." Brown, 895 F.2d

12  at 535. If a petitioner has not properly exhausted his claims, the district court, in its

13  discretion, may either "excuse the faulty exhaustion and reach the merits or require the

14  petitioner to exhaust his administrative remedies before proceeding in court." Id.

15  Exhaustion may be excused if pursuing the administrative remedy would be futile. See

16  Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993). Factors

17  weighing in favor of requiring exhaustion include whether: (1) agency expertise makes

18  agency consideration necessary to generate a proper record and reach a proper decision;

19  (2) relaxation of the requirement would encourage the deliberate bypass of the

20  administrative scheme; and (3) administrative review is likely to allow the agency to correct

21  its own mistakes and to preclude the need for judicial review. See Noriega-Lopez v.

22  Ashcroft, 335 F.3d 874, 880-81 (9th Cir. 2003).

23      Here, Petitioner filed the instant petition less than one week after the determination

24  that he was denied recommendation for placement  in the RCC. In Petitioner's traverse,

25  he does not describe any efforts to exhaust his administrative remedies even after

26  Respondent's answer asserted that the petition was not exhausted. While the undersigned

27  is aware of reasons to defer judgment on a matter not yet exhausted, recent opinions from

28  the Ninth Circuit in Sacora v Thomas, 628 F.3d 1059 (9th Cir. 2010) and Reeb v. Thomas,

1  636 F.3d 1224, 1226 (9th Cir. 2011) weigh in favor of deciding this case now rather than

2  delaying its resolution.

3  **III.   APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

4        Writ of habeas corpus relief extends to a person in custody under the authority of

5  the United States. See 28 U.S.C. § 2241. Relief is available if a federal prisoner can show

6  he is "in custody in violation of the Constitution or laws or treaties of the United States." 28

7  U.S.C. § 2241(c)(3). Petitioner's claims are proper under 28 U.S.C. § 2241 and not 28

8  U.S.C. § 2255 because they concern the manner, location, or conditions of the execution

9  of petitioner's sentence and not the fact of petitioner's conviction or sentence. See Tucker

10  v. Carlson, 925 F.2d 330, 331 (9th Cir. 1991) (stating that a challenge to the execution of

11  a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C.

12  § 2241"). Venue is proper in this District as Petitioner is challenging the execution of his

13  sentence at Taft Correctional Institution, which is within the Eastern District of California.[1]

14  **IV.   STATUTORY AND REGULATORY BACKGROUND**

15        In Sacora v. Thomas, 628 F.3d 1059 (9th Cir. 2010), petition for cert filed, (U.S. May

16  16, 2011) (No. 10-10580), the Ninth Circuit laid out the relevant statutory background

17  applicable in this case:

18        Two statutory provisions govern the BOP's authority to place inmates
in its custody in RRCs: 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621

19  governs the authority of the BOP to designate a prisoner's placement in
general while he or she is in the BOP's custody. In the context RRCs, this

20  section governs the BOP's authority in cases where a prisoner who has more
than a year left to serve of his or her prison sentence requests a transfer to

21  such a facility. [FN 2]

22  [FN 2] That governing statute provides:

23  The Bureau of Prisons shall designate the place of the prisoner's
imprisonment. The Bureau may designate any available penal or correctional

24  facility that meets minimum standards of health and habitability established

25        [1]Petitioner has since been transferred to Federal Correctional Institution - Low in Yazoo City,

26  Mississippi. (Not. of Change of Address, ECF No. 21.) However, as the custodian was in the territorial
jurisdiction of the Court at the time the petition is filed, transfer of the Petitioner thereafter does not defeat

27  personal jurisdiction that has once been properly established. Ahrens v. Clark, 335 U.S. 188, 193, 68 S.
Ct. 1443, 92 L. Ed. 1898 (1948), overruled on other grounds in Braden v. 30th Judicial Circuit Court of

28  Kentucky, 410 U.S. 484, 493, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973), citing Mitsuye Endo, 323 U.S. 283,
305, 65 S. Ct. 208, 89 L. Ed. 243 (1944); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990).

by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering —

     (1) the resources of the facility contemplated;

     (2) the nature and circumstances of the offense;

     (3) the history and characteristics of the prisoner;

     (4) any statement by the court that imposed the sentence -

          (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

          (B) recommending a type of penal or correctional facility as appropriate; and

     (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

.... The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal correctional facility to another . . .

18 U.S.C. § 3621(b).

Sacora, 628 F.3d at 1061-62.

On April 14, 2008, five days after the [Second Chance Act] went into effect, BOP officials issued a memorandum (the "April 14 Memorandum") explaining the changes to the law and setting forth guidance to BOP staff about how to administer the law. On October 21, 2008 . . . the BOP issued the regulations required by the statute . . . .

Substantively, the regulations: (1) define the terms "community confinement" and "home detention"; (2) provide that inmates may be designated to community confinement as a condition of prerelease custody for a period not to exceed 12 months and to home detention for a period not to exceed the shorter often percent of the inmate's term of imprisonment or six months; and (3) provide that inmates will be considered for community confinement in an manner consistent with § 3621(b) on an individual basis, with placements of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

Sacora, 628 F.3d at 1063 (footnote omitted).

On November 14, 2008, BOP officials issued another memorandum (the "November 14 Memorandum") [*9] which provides guidance to BOP staff when considering inmate requests for transfers to RRCs before the final 12 months of the inmate's sentence. It notes that "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]," and that "[s]taff cannot, therefore, automatically deny an inmate's request for transfer to a RRC." Instead, "inmate requests for RRC placement must receive individualized consideration." The memorandum further notes that "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau policy." However, as in the April 14 Memorandum, the November 14 Memorandum advises BOP staff that "a RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

Id. at 1064.

# V. ANALYSIS OF PETITIONER'S CLAIM

## A. BOP Policy Does Not Violate the Second Chance Act

Petitioner asserts that Respondent's interpretation of the Second Chance Act conflicts with the individualized factors set forth under 18 U.S.C. § 3621(b). This argument is without merit.

In Sacora, the Ninth Circuit specifically analyzed the current BOP policy with respect to inmates requesting a transfer to a RRC prior to their final twelve months of imprisonment. The Court specifically found that the BOP's policy did not violate the Second Chance Act by explaining that:

> The . . . policy set forth in the November 14 Memorandum is consistent with § 3621(b) . . . Petitioners argue, however, that the policy as set forth in the November 14, Memorandum is contrary to our decision in Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008). We disagree.
>
> In Rodriguez, we held that the prior version of the regulations codified at 28 C.F.R. §§ 570.20 and 570.21 was invalid, because it "categorically exclude[d] inmates from RRC eligibility without considering the mandatory factors articulated in § 3621(b)." 541 F.3d at 1187. No such problem exists here. Although the November 14 Memorandum does set forth a presumption that RRC placements of longer than six months should occur only "when there are unusual or extraordinary circumstances justifying such placement[ ] and the Regional Director concurs," the Memorandum also admonishes BOP staff that they "cannot . . . automatically deny an inmate's request for transfer to a RRC" because "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]." The memorandum also reminds the BOP staff that they "must individually consider the request, just as they would any other request for lower security transfer." Further, the memorandum reminds the staff that when they review an inmate's transfer request, they should review the five factors set forth in 18 U.S.C. § 3621(b) that, we noted in Rodriguez, are "mandatory." Rodriguez, 541 F.3d at 1187. Accordingly, we conclude that the BOP's policy as set forth in the November 14 Memorandum does not violate the SCA.

Sacora, 628 F.3d at 1068. For the  reasons outlined above in Sacora, Petitioner's challenge to the BOP's current policy lacks merit. The policy does not violate the Second Chance Act.  Petitioner's claim is denied.

## B. The Court Lacks Jurisdiction to Consider Individualized Determinations Regarding RCC Placement

Petitioner asserts that BOP's denial of his transfer request into the RCC program was inappropriate. This Court lacks jurisdiction to hear Petitioner's claim.

The APA provides a cause of action for persons suffering a legal wrong because of adverse agency action, and agency actions can be held unlawful when those actions are arbitrary, capricious, or an abuse of discretion. 5 U.S.C. §§ 702, 706(2) (A); Reeb v. Thomas, 636 F.3d 1224, 1226 (9th Cir. 2011).

The Ninth Circuit recently determined that 18 U.S.C. § 3625 precludes judicial review under the APA of certain individualized determinations by the BOP. Reeb, 636 F.3d at 1226-27. In Reeb, the petitioner challenged the BOP's decision to expel him from an intensive drug treatment program for federal inmates know as the Residential Drug Abuse Program (RDAP). As the Reeb court discussed, the BOP has broad statutory discretion over the entire RDAP program under 18 U.S.C. § 3621(e), and inmates who successfully complete RDAP are eligible for a up to a one year sentence reduction. Id. at 1225. The petitioner in Reeb contended the BOP lacked a rational basis for expelling him from RDAP under § 706(2)(A) of the APA. Id. at 1227-28.

The Reeb court concluded that it lacked jurisdiction to hear the claim, holding that 18 U.S.C. § 3625 unambiguously specified that judicial review under the APA was precluded. Section 3625 states that the APA does not apply to decisions relating to imprisonment governed by U.S.C. § 3621. Specifically, the court stated:

> To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625. Accordingly, any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court. The BOP's substantive decisions to remove particular inmates from the RDAP program are likewise not subject to judicial review.

Reeb, 636 F.3d at 1227.

Reeb is also instructive with regard to determinations to the RCC. Like the RDAP program, the BOP administers under § 3621(e), the BOP in this case has the sole authority to make RRC placement determinations under § 3621(b). And, like the RDAP determination in Reeb, the BOP's decision to deny Petitioner's RRC transfer request in this case is a substantive, discretionary determination by the BOP. Therefore, like the RDAP

decisions in Reeb, RRC placement decisions are properly left to the BOP's discretion.

Accordingly, the BOP's substantive, discretionary RRC decision adverse to Petitioner is not reviewable in the district court pursuant to § 706(2)(A) of the APA. Reeb, 636 F.3d at 1227; see also Binford v. Thomas, 2011 U.S. Dist. LEXIS 50242 (D. Or. May 10, 2011). Thus, this Court lacks jurisdiction to review an individualized determination regarding Petitioner's RCC placement. As this Court lacks jurisdiction, Petitioner is not entitled to habeas relief and the claim is denied.[2]

## VI.   ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for a writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) A certificate of appealability is not required in this case. Forde v. U.S. Parole Comm'n, 114 F.3d 879 (9th Cir.1997).

IT IS SO ORDERED.

Dated:   September 12, 2011          /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE

---

[2]Respondent asserts that the Petition is moot as Petitioner challenges policies of the BOP that are no longer in effect. As this Court lacks jurisdiction to review individualized determinations regarding RCC placement, it need not determine if Petitioner's claims are moot based on this issue.